# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ANGELA W. DEBOSE,

      Plaintiff,

v.                                         Case No.: 8:18-cv-473-EAK-AAS

ELLUCIAN   COMPANY,   L.P.,   and
ANDREA DIAMOND,

      Defendants.

---

## ORDER

Before the Court is Plaintiff's Motion to Remand ("Motion") (Doc. 8).[1]

Defendants responded in opposition ("Response") (Doc. 17).   The Motion is

**GRANTED**.

## I.   Background

Plaintiff, proceeding *pro se*, commenced this action by filing a civil complaint

in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough

County, Florida, on January 29, 2018.  (Doc. 2).  Through her complaint,[2] Plaintiff

---

[1]  Plaintiff supplemented her Motion upon the filing of her amended complaint.  (Doc. 37).  For the reasons stated in Defendants' response, Plaintiff's supplement is exceedingly unhelpful in resolving the instant Motion.  That said, the Court rejects Defendants' argument, levied in their response to Plaintiff's supplement, that Plaintiff has impliedly consented to federal jurisdiction by filing an amended complaint and seeking transfer of this case back to the originally-assigned district judge.  See Knowles v. Hertz Equip. Rental Co., 657 F. Supp. 109, 111 (S.D. Fla. 1987).

[2]  As briefly noted above, Plaintiff, with leave of Court, filed an amended complaint on July 16, 2018.  (Doc. 34).  Plaintiff's amended complaint did not add any additional counts to or remove any counts from her original complaint, and the alterations Plaintiff made are otherwise irrelevant

alleges that she was discharged from her employment as Registrar of the University of South Florida because of defamatory and professionally damaging statements made by Defendant Andrea Diamond, a consultant with Defendant Ellucian Company L.P., in a "Post Implementation Assessment" report commissioned by the University of South Florida.  (Doc. 34).  Plaintiff's complaint accordingly asserts claims against Defendants for negligence, defamation, and "wantonness."  Id.

Defendants timely removed the case to this Court on February 27, 2018.  (Doc. 1).  Through their removal notice, Defendants contend that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.  Id. at ¶3.  Plaintiff filed her Motion on March 8, 2018.  (Doc. 8).  Through her Motion, Plaintiff contends that Defendants have failed to establish that the amount in controversy exceeds the jurisdictional threshold, and that the Court accordingly lacks subject matter jurisdiction over this case.  See generally id.  Defendants filed their Response on March 22, 2018.  (Doc. 17).  Through their Response, Defendants counter that, based on the facial allegations in Plaintiff's complaint, including her prayer for punitive damages, together with a comparison of awards in "comparable" cases, "there can be no real

---

for purposes of determining the Court's subject matter jurisdiction.  For simplicity, the Court will refer to the amended, operative complaint as the "complaint" unless otherwise noted.

Case No.:  8:18-cv-473-EAK-AAS

doubt that the jurisdictional threshold has been established." Id. at 6.  The Court disagrees.

## II.    <u>Legal Standard</u>

Because this case was originally filed in state court and removed by Defendants to federal court, Defendants bear the burden of proving that federal jurisdiction exists.  <u>Williams v. Best Buy Co.</u>, 269 F.3d 1316, 1319 (11th Cir. 2001). Where, as here, Plaintiff has not pled a specific amount of damages, <u>see</u> (Doc. 34, at ¶1) (alleging, generally, that "[t]his is an action for damages that exceed $15,000"), Defendants carry the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold, <u>Williams</u>, 269 F.3d at 1319.

> When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement.  If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed.

<u>Id.</u>  "[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." <u>Burns v. Windsor Ins. Co.</u>, 31 F.3d 1092, 1095 (11th Cir. 1994) (citations omitted).

Case No.:  8:18-cv-473-EAK-AAS

## III.  **Discussion**

Defendants contend that the amount in controversy is apparent from the facial allegations of Plaintiff's complaint.  (Doc. 17, at 6).  In support, Defendants cite Eleventh Circuit precedent – both published and unpublished – for the proposition that "[w]hen a plaintiff fails to specify her damages, a defendant may discharge its burden under § 1446 by presenting outcomes in comparable actions" and "meaningfully contect[ing] the preceding actions to the substantive allegations in the plaintiff's complaint." Id. at 6–7 (citing Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 753 (11th Cir. 2010); Wineberger v. RaceTrac Petroleum, Inc., 672 F. App'x 914, 917 (11th Cir. 2016) (unpublished) (per curiam)).  Defendants also contend, citing an unpublished Order from this District, that Plaintiff's prayer for an award of punitive damages, alone, is sufficient to satisfy the jurisdictional threshold.  (Doc. 17, at 9–10) (citing Nowicki v. Severn Trent Envtl. Serv., Inc., No. 2:17-cv-160-SPC-MRM, (Doc. 14), (M.D. Fla. May 5, 2017)).  The Court will address each contention, in turn, below.

Relying on Pretka and Wineberger, Defendants contend that a review of awards in other "comparable" cases show that the amount in controversy in this case exceeds $75,000.  (Doc. 17, at 6–9).  A discussion of the Eleventh Circuit's decisions in Pretka and Wineberger, however, must be preceded by a discussion of the Eleventh Circuit's earlier decision in Lowery v. Ala. Power Co., 483 F.3d 1184 (11th

4

Cir. 2007).   In <u>Lowery</u>, the plaintiffs filed suit in state court against various businesses for allegedly discharging particulates and gases into the atmosphere and ground water, causing the plaintiffs to suffer injury.   <u>Id.</u> at 1187.   One of the defendants removed the case to federal court under Class Action Fairness Act's ("CAFA") "mass action" provision. <u>Id.</u> at 1188.   The defendant attached to its notice of removal copies of the initial complaint and the third amended complaint, but nothing else. <u>Id.</u> at 1189, n.8.   Those pleadings "contain[ed] neither an *ad damnum* clause indicating the amount of damages sought, nor any other concrete information about the value of the plaintiffs' claims." <u>Id.</u> at 1219.

The plaintiffs filed a motion to remand. <u>Id.</u> at 1189.   The defendant responded by filing a supplement to its notice of removal, pointing out that to reach CAFA's $5 million jurisdictional threshold, each of the 400 plaintiffs' claims would need to put in controversy only $12,500. <u>Id.</u>   Through its supplement, the defendant argued it was evident that more than $5 million was in controversy because plaintiffs in recent mass tort cases in Alabama had received jury verdicts or settlements exceeding that amount. <u>Id.</u>   The supplement failed, however, to explain the facts of those other tort cases or link them to the facts of the plaintiffs' case. <u>Id.</u> at 1221. Upon consideration, the district court concluded that the defendant had failed to prove that at least one plaintiff had claims exceeding $75,000 or that all of the plaintiffs' claims, in the aggregate, exceeded $5,000,000. <u>Id.</u> at 1192. Specifically,

the district court explained that the defendant's "hopeful conjecture based on Alabama jury verdicts in cases that may have some similarity to this case, but are not closely similar, do not suffice to remove the obligation of the removing defendant[] to prove that the jurisdictional amount exists in a case in which no plaintiff has formally claimed a particular sum, much less a sum more than $75,000." Lowery v. Honeywell Int'l, Inc., 460 F. Supp. 2d 1288, 1299 (N.D. Ala. 2006).  The defendant appealed.  Lowery, 483 F.3d at 1192.

On appeal, the Eleventh Circuit concluded that the defendant's "supplement and its additional 'evidence' about other mass tort cases told [the panel] 'nothing about the value of the claims' because the record was 'bereft of detail' about whether the plaintiffs' complaint was similar to those other cases." Pretka, 608 F.3d at 753 (quoting Lowery, 483 F.3d at 1220–21).  "The record in Lowery contained only 'naked pleadings' – no specific factual details, no discovery, no affidavits or declarations, no testimony, no interrogatories, and no exhibits other than the complaints." Id.  And the Lowery panel "took pains to emphasize that fact.  Over and over." Id. (citing Lowery, 483 F.3d at 1189 n.8 ("[the defendant] cited nothing from such discovery in support of its notice of removal or in its subsequent argument to the district court[.]"); id. at 1209 ("naked pleadings"); id. at 1210 ("bare pleadings"); id. ("a removal case – like this one – where there is no *evidence* to review") (emphasis in original); id. (distinguishing Lowery from a case in which

counsel admitted certain jurisdictional facts during oral argument and another case in which the defendant's employee testified during a pretrial hearing); id. ("naked pleading context"); id. ("only the bare pleadings are available"); id. at 1210–11 ("We have no evidence before us by which to make any informed assessment of the amount in controversy."); id. at 1213 n.63 ("bare pleadings"); id. at 1217 ("[the defendant] . . . has asserted no factual basis to support federal jurisdiction[.]"); id. at 1220 (emphasizing that the panel was "without the benefit of any evidence [regarding] the value of individual claims")).

The Lowery panel went on to explain that "[t]he absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction *should not be divined by looking to the stars.*" Lowery, 483 F.3d at 1215 (emphasis added).  On that basis, the Lowery panel concluded that defendants had failed to meet their burden.  Id. at 1220–21.

The Eleventh Circuit was later forced to address its earlier decision in Lowery on review of the Southern District of Florida's decision in Pretka.  In Pretka, the plaintiffs, prospective purchasers of new luxury condominium units, brought a putative class action against the developer of the condominium in state court after the developer refused to let the plaintiffs out of their purchase contracts.  608 F.3d at 747.  The plaintiffs attached the purchase contracts to the complaint.  Id. at 748. The purchase contracts required the plaintiffs to pay to the escrow agent an initial

deposit equal to 10% of the purchase price.  Id.  The purchase contracts also required the plaintiffs to pay to the seller a "Construction Payment" equal to 10% of the purchase price.  Id.  Through their lawsuit, the plaintiffs demanded repayment of those amounts, and the parties did not dispute that the sum of those amounts counted toward the amount in controversy.  Id.  The plaintiffs attached six exhibits to their complaint, which showed that the named plaintiffs agreed to make initial deposits and construction payments totaling $628,240, with the average deposit per condominium being $104,707.  Id.  The complaint further stated that "[t]he class is believed to consist of over 300 members, and "that the named plaintiffs' claims [were] typical of those of the class."  Id.

The developer removed the case to federal court pursuant to CAFA.  Id. at 749.   The developer's notice of removal contended that CAFA's amount-in-controversy requirement was met because the company had "collected purchase deposits . . . totaling in excess of $5 million."  Id.  The developer supported that factual assertion by attaching a sworn declaration by the Chief Financial Officer of the developer's parent company.  Id.  In his declaration, the CFO stated, *inter alia*, that the developer had "collected more than $5 million in condominium unit purchase deposits from prospective purchasers[.]"  Id.  On that basis, the developer's notice of removal argued that "it [was] clear from the allegations of the Amended Complaint as well as the facts set forth in this Notice of Removal that the amount in

Case No.:  8:18-cv-473-EAK-AAS

controversy . . . exceed[ed] the $5,000,000 minimum required under 28 U.S.C. §
1332(d)(2)." Id.

The plaintiffs filed a motion to remand arguing that the developer had not
sufficiently established the requisite amount in controversy, which the developer
opposed. Id. Along with its opposition, the developer attached the first three pages
of each unnamed plaintiff's purchase contract and a sworn declaration by the
Contract and Closing Manager for the developer's parent company, which swore
that the condominium purchase deposits totaled $41,183,226.08. Id.

After a hearing on the motion, the district judge remanded the case,
concluding that the developer had failed to prove, by a preponderance of evidence,
that the amount in controversy exceeded $5 million. Pretka v. Kolter City Plaza II,
Inc., No. 09-80706-CIV-MARRA, 2009 WL 4547042, at *1, 4 (S.D. Fla. Nov. 30,
2009), rev'd, 608 F.3d 744 (11th Cir. 2010).  Specifically, the district court: (1) read
Lowery as barring consideration of the two declarations and the unnamed plaintiffs'
contracts because none of them were documents "received by Defendant from
Plaintiffs"; (2) read Lowery as requiring it to reject the developer's "impermissible
speculation" on the "potential damage claim of putative class members, as opposed
to named plaintiffs"; and (3) read Lowery as barring consideration of the Contract
and Closing Manager's declaration and the unnamed plaintiffs' contracts because

Case No.:  8:18-cv-473-EAK-AAS

the developer did not submit them at the time of its notice of removal.  Pretka, 608

F.3d at 750–51.  The developer appealed.  Id. at 751

    As initial matter, the Court would be remiss in failing to note that the issue of

utilizing prior decisional law as a tool to evaluate and quantify the amount in

controversy in a particular case was not presented on appeal to the Pretka panel.  So,

the opinion is of no help to Defendants in that regard.  Further, in reversing the

district court's decision, the Pretka panel made it a point to distinguish the issues

presented by the case before it and its prior decision in Lowery:

> We stated in Lowery that [t]he absence of factual allegations pertinent
> to the existence of jurisdiction is dispositive and, in such absence, the
> existence of jurisdiction *should not be divined by looking to the stars.*
> On that basis we concluded that the Lowery defendants had failed to
> establish federal jurisdiction by a preponderance of the evidence.  But
> Lowery did not say, much less purport to hold, that the use of deduction,
> inference, or other extrapolation of the amount in controversy is
> impermissible, as some district courts have thought.  That was not the
> question in Lowery.  Instead, the question was how to apply the
> preponderance of the evidence standard in the "fact-free context" of
> that particular case.  The answer we gave is that without facts or specific
> allegations, the amount in controversy could be "divined [only] by
> looking at the stars"—only through speculation—and that is
> impermissible.
>
> A different question is presented, however, when a removing defendant
> makes specific factual allegations establishing jurisdiction and can
> support them (if challenged by the plaintiff or the court) with evidence
> combined with reasonable deductions, reasonable inferences, or other
> reasonable extrapolations.  That kind of reasoning is not akin to
> conjecture, speculation, or star gazing.

608 F.3d at 753–54 (internal citations and quotations omitted) (alterations and emphasis in original).  Thus, all <u>Pretka</u> stands for, insofar as it's relevant in deciding the instant Motion, is the proposition that a defendant may submit its own evidence in order to satisfy the jurisdictional requirements of removal, and district courts need not "suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount."  <u>Id.</u> at 770 (quoting <u>Roe v. Michelin N. Am., Inc.</u>, 613 F.3d 1058, 1062 (11th Cir. 2010)).  And the Court does not disagree.  Nor is the Court saying that evidence of monetary awards in prior, "closely similar" cases is inadmissible for purposes of determining the amount in controversy; indeed, it is.  <u>Lowery</u>, 460 F. Supp. 2d at 1299.  The question, though, is when is that type of "evidence" enough?

That question was answered, although indirectly and only to a small degree, by the Eleventh Circuit's (unpublished) opinion in <u>Wineberger</u>.  In <u>Wineberger</u>, the plaintiff filed suit in state court for age discrimination under the Florida Civil Rights Act.  672 F. App'x at 914.  The plaintiff sought to recover back pay, front pay or reinstatement, punitive damages, and damages for emotional distress, pain and suffering, and mental anguish, pre-and post-judgment interest, costs, and attorneys' fees.  <u>Wineberger v. Racetrac Petroleum, Inc.</u>, No. 5:14-cv-653-JSM-PRL, 2015 WL 225760, at *1 (M.D. Fla. Jan. 16, 2015).  The defendant removed the case based on diversity jurisdiction.  <u>Id.</u>  With its notice of removal, the defendant filed the

declarations of the defendant's general counsel, vice president, and assistant secretary, who reviewed the plaintiff's personnel records and reported that her average gross monthly income for the year preceding her termination was $1,055.85. Id. The plaintiff filed a motion to remand, arguing that the defendant failed to satisfy its burden of establishing that the amount in controversy exceeded $75,000. Id. The defendant countered that the plaintiff's prayer for back and front pay, combined with an award of non-economic damages, punitive damages, and attorneys' fees,[3] more likely than not exceeded $75,000. Id. at *2. As to back and front pay, the defendant calculated combined damages of $55,959, which the district court accepted. Id. at *3. The district court further noted that, under the Florida Civil Rights Act, the plaintiff could recover up to $100,000 in punitive damages. Id. The Florida Civil Rights Act also permits an award of attorneys' fees, and the defendant had provided evidence that Plaintiff had incurred approximately $5,000 in attorneys' fees, as of the date of removal. Id. Assuming, for purposes of deciding the motion, that the plaintiff was awarded just ten percent of the maximum allowable punitive damages and her attorneys' fees doubled by the date of trial, the court concluded that the

---

[3] "The general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract." Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 808 n.4 (11th Cir. 2003). Here, Defendants make no argument that a potential award of attorneys' fees should be considered in the court's jurisdictional calculus.

Case No.:  8:18-cv-473-EAK-AAS

plaintiff's claim for damages would meet the jurisdictional requirement even without factoring in potential damages associated with emotional distress.  Id.

As to Plaintiff's claim for emotional distress damages, the district court looked to awards in other Florida Civil Rights Act cases, which had found that "in a typical age discrimination case, where a plaintiff experiences no physical injury and presents no medical or psychological evidence of emotional pain and suffering, noneconomic damages should not exceed the $5,000 to $30,000 range." Id. at *4 (internal quotations and citations omitted).  That the plaintiff "may receive a potential award for noneconomic damages in the $5,000 to $30,000 range" further convinced the district court that the amount the plaintiff *could* recover likely exceeded the jurisdictional threshold and denied the plaintiff's motion.  Id.

When the district court subsequently granted summary judgment in favor of the defendant, the plaintiff appealed, contending, *inter alia*, that the district court lacked subject-matter jurisdiction because the amount in controversy did not exceed $75,000.  Wineberger, 672 F. App'x at 916.  Specifically, the plaintiff challenged the district court's calculations of the amount in controversy by arguing that Lowery precluded the district court from "speculating" as to her damages.  Id. at 917.  The panel rejected the plaintiff's arguments, concluding that she "fail[ed] to account for other binding decisions that expressly allow a district court to make reasonable deductions and inferences and to rely on judicial experience." Id. (citing Roe, 613

13

Case No.:  8:18-cv-473-EAK-AAS

F.3d at 1061–62; <u>Pretka</u>, 608 F.3d at 747, 770).  Without saying much more, the panel affirmed the district court's decision.  <u>Id.</u>

With that legal backdrop squarely in mind, the Court now turns to Defendants' specific contentions.  Defendants contend that "Plaintiff's claim for compensatory damages independently satisfies the amount in controversy requirement."  (Doc 17, at 6).  Specifically, with regard to lost wages, Defendants contend that "back pay is not only considered in calculating the jurisdictional threshold, but it is regularly computed through an estimated trial date," and that "case law is replete with examples of district courts – applying Eleventh Circuit precedent – assessing the amount in controversy requirement by adding the potential back pay award to the date of trial."  <u>Id.</u> at 3–4 (citations omitted).  Regrettably, however, and unlike in <u>Wineberger</u>, Defendants have failed to provide the Court with any evidence – e.g., declarations, depositions, employment contracts, or other records – that would assist in calculating a potential award of back pay.  Defendants have not even provided the Court with their own estimate of a total back pay award.  Rather, Defendants have simply stated that Plaintiff *could* recover amounts for back pay, but provide nothing more.  This is insufficient.  The Court cannot – and will not – speculate as to what amounts of back pay, if any, Plaintiff might be entitled to recover.  And this same conclusion holds true for any potential award of front pay.

Case No.:  8:18-cv-473-EAK-AAS

Defendants further contend that "[s]everal actions involving defamation demonstrate, quite clearly, that the compensatory damages at issue in this action satisfy the jurisdictional threshold." (Doc. 17, at 8).  Specifically, Defendants cite to four cases:  Arthur Geddes v. Am. Airlines and Terry Meenan, No. 02-03105-CA 13 (Fla. 11th Cir. Jan. 21, 2005); Philip Cameron v. Fla. State Lodge Fraternal Order of Police, Inc., et al., No. 06-2005-CA-015197 (Fla. 17th Cir., June 24, 2007); Barbara A. Bates v. St. Lucie Cnty. Sheriff's Office and Ken Mascara, No. 02-CA-001129 (Fla. 19th Cir. May 9, 2008); and Medina v. United Christian Evangelistic Ass'n of Fla., 2010 WL 4565491 (S.D. Fla. Jan. 27, 2010).  Defendants contend that each of those cases "involved, as alleged here, defamation with an alleged injury to reputation and mental suffering."  (Doc. 17, at 9).  Defendants represent that the plaintiffs in those cases were awarded between $100,000 and $2 million.  Id. at 8–9

The Court sees several problems with Defendants' reliance on those cases. As an initial matter, this case is akin to Lowery in the sense that the Court is forced to apply the preponderance of the evidence standard in a "fact-free context" with only "naked pleadings."   483 F.3d at 1209 ("We must acknowledge the peculiar implications of applying the preponderance of the evidence standard – a standard usually used to weigh competing pieces of *evidence* – to a situation, as here, where the court has only naked pleadings to consider.  . . . There is a unique tension in applying a fact-weighing standard to a fact-free context.") (emphasis added).

Case No.:  8:18-cv-473-EAK-AAS

Defendants have not provided any specific factual details about *this* case, other than regurgitating a handful of self-serving, cherry-picked paragraphs in Plaintiff's unverified complaint, see (Doc. 17, at 7), which is not itself "evidence."  This, of course, makes it inherently difficult to compare this case to *any* other case, regardless of how similar a particular case may be.  Defendants have provided "no discovery, no affidavits or declarations, no testimony, no interrogatories, and no exhibits other than the complaint." Pretka, 608 F.3d at 753.  As detailed by the Court, supra, the courts in the cases cited by Defendants had much more evidence to work with in venturing to determine the amount in controversy.  See, e.g., id. at 748–749 (six exhibits, including purchase contracts, attached to the complaint and two sworn declarations); Wineberger, 2015 WL 225760, at *1 (three sworn declarations, which included, *inter alia*, information related to the plaintiff's monthly salary).

Likewise, Defendants have not provided sufficient details about the cases they cite to permit the Court to determine that those cases are (or are not) "closely similar" to this case. Lowery, 460 F. Supp. 2d at 1299.  While those cases involved allegations of defamation and negligent retention (allegations made by Plaintiff, here), Defendants fail to sufficiently illuminate the *circumstances* surrounding those particular plaintiffs and their respective allegations; Defendants merely provide short, summary paragraphs, some no longer than two sentences.  Moreover, those cases involved additional claims not made by Plaintiff in this case, see, e.g.,

16

Case No.:  8:18-cv-473-EAK-AAS

Cameron, No. 06-2005-CA-015197 (breach of contract); Bates, No. 02-CA-001129 (tortious interference with a prospective advantageous business relationship); Medina, 2010 WL 4565491 (sexual harassment and various other common law claims), and Defendants aggregate the total jury awards, so the Court can't be sure what amounts the juries awarded for what claims.  Thus, to attempt to estimate Plaintiff's potential damages based solely on what Defendants have provided to the Court would be to engage in pure guesswork, and such speculation is not only "frowned upon," Lowery, 483 F.3d at 1211 (citation omitted), it "is impermissible," Pretka, 608 F.3d at 753–54.  Without more, Defendants' anecdotal "evidence," although often cited in support of removal in diversity cases, is not enough, on its own and as presented, to establish the Court's jurisdiction.

That leaves only Defendants' contention that Plaintiff's prayer for punitive damages, by itself, is sufficient to establish jurisdiction.  In support of their contention, Defendants rely on Nowicki v. Severn Trent Environmental Services, Inc., No. 2:17- cv-160-SPC-MRM, (Doc. 14), (M.D. Fla. 2017), an unpublished Order from the Fort Myers Division of this District.  In Nowicki, the plaintiff filed suit against the defendant alleging discrimination and retaliation based on gender in violation of the Florida Civil Rights Act.  Id. at 1.  The defendant removed the case based on diversity jurisdiction.  Id. at 1–2.  Plaintiff moved to remand the case, challenging whether the amount in controversy was met.  Id. at 2.  The district judge

Case No.:  8:18-cv-473-EAK-AAS

found that "the demand for punitive damages alone satisfies the jurisdictional requirement.  Punitive damages are expressly provided for in the FCRA, which are capped at $100,000, well in excess of the $75,000 jurisdictional requirement." Id. at 3 (citing Fla. Stat. § 760.11(5)).[4]

"While the decisions of [other district judges] are persuasive, they are not binding authority." Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., 240 F.3d 956, 965 (11th Cir. 2001) (citations omitted).  As a result, this Court is not required to follow the decision of its sister court in Nowicki.  Moreover, Nowicki cites to no authority – binding or persuasive – for the proposition that a demand for punitive damages, by itself, satisfies the jurisdictional requirement, and this Court has found no such authority through its own research.  Indeed, if that were the rule, every complainant seeking punitive damages would, *ipso facto*, belong in federal court.  Such a result would be untenable, and contrary to binding, precedential authority in this circuit.

In sum, Defendants have failed to carry their burden to establish, by a preponderance of the evidence, that the amount in controversy meets the

---

[4]  The Court notes that the district judge in Nowicki further found that, "even if the punitive damages did not satisfy the jurisdictional requirement, the potential award of back pay to the date of trial would meet the threshold." No. 2:17- cv-160-SPC-MRM, (Doc. 14, at 4), (M.D. Fla. 2017). Along with its notice of removal, the defendant provided the declaration of a human resources officer, who provided the plaintiff's hourly wage, which the district judge used to calculate a potential award of $111,408 in back pay, satisfying the jurisdictional requirement. Id. Thus, in that respect, Nowicki is distinguishable from this case.

Case No.:  8:18-cv-473-EAK-AAS

jurisdictional threshold.   Because the Court finds no other bases to exercise jurisdiction over Plaintiff's claims, this case is due to be remanded.

**IV.**   <u>**Conclusion**</u>

Accordingly, it is **ORDERED** and **ADJUDGED** that Plaintiff's Motion to Remand (Doc. 8) is **GRANTED**.  This case is hereby **REMANDED** to the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida. The Clerk is directed to close the case and terminate any pending motions.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 17th day of October, 2018.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

19